UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFERSON BURNETT,

                Plaintiff,

      – against –

OCÉ NORTH AMERICA and TOM DONOVAN,

                Defendants.

**OPINION AND ORDER**

11 Civ. 6894 (ER)

Ramos, D.J.:

      Plaintiff Jefferson Burnett ("Plaintiff"), appearing *pro se*, brings this action pursuant to Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, codified at New York Executive Law §§ 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, codified at New York City Administrative Code §§ 8-101, *et seq.* ("NYCHRL"), alleging that his former employer, Océ North America ("Océ" or the "Company"), and supervisor, Tom Donovan ("Donovan" and together with Océ, "Defendants"), discriminated against him on the basis of his race and national origin.  Plaintiff is a Black man of Barbadian descent who self-identifies as Afro-Caribbean.  Océ is a copying and printing company that previously employed Plaintiff as a service technician in New York City, but selected him for layoff in December 2008.  Plaintiff contends that unlawful discrimination motivated Defendants' decision to dismiss him from his job and, through the instant action, seeks reinstatement and $150,000.00.  Compl., Doc. 2.

      Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Doc. 36.  For the reasons discussed below, the motion is GRANTED.

## I.     Factual Background

The following facts are undisputed except where otherwise noted.[1]

### A.  The Parties

Plaintiff self-identifies as an Afro-Caribbean Black male of Barbadian descent.  Defs.'

56.1 Stmt. ¶ 4, Doc. 41; Compl. 2.[2]  Plaintiff began employment at Pitney Bowes in May 1997 as

a Trainee Customer Service Representative.  Defs.' 56.1 Stmt. ¶ 5.  From approximately 1997 to

2008, he worked, in varying capacities, as a service technician on copy machines.

---

[1] Under Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"), a party moving for summary judgment pursuant to Rule 56 must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local R. 56.1(a).  Each statement must be accompanied by a citation to admissible evidence.  Local R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record to support or controvert a purported material fact).  In the ordinary course, when the opposing party fails to respond to the moving party's Rule 56.1 Statement, "the material facts contained in the moving party's statement are deemed admitted as a matter of law."  *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 177-78 (S.D.N.Y. 2009) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); Local R. 56.1(c)).

However, as the Second Circuit has made clear, "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)), and "where a *pro se* plaintiff fails to submit a proper [Local] Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions."  *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).  Moreover, courts are to read a *pro se* litigant's submissions "liberally and interpret them 'to raise the strongest arguments that they suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Defendant submitted a proper Local Rule 56.1 Statement and provided Plaintiff with notice, pursuant to Local Rule 56.2, of the potential consequences of not responding to the motion.  Docs. 36-42.  Plaintiff failed to submit a response to Defendant's Local Rule 56.1 Statement or a counterstatement of his own; rather, he has solely opposed the instant motion for summary judgment through an "Affirmation in Opposition to Motion," which totals three pages.  Doc. 44 ("Pl.'s Opp.").

Therefore, this Court has endeavored to discern from the record if there is any evidentiary support for the assertions contained in Plaintiff's opposition, and to determine if there are any other material issues of fact based on the evidence in the record.  *Geldzahler v. N.Y. Med. Coll.*, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010).  The Court has considered the present motion in light of the entirety of its record to afford Plaintiff the special solicitude to which he is entitled.  *Burke v. Royal Ins. Co.*, 39 F. Supp. 2d 251, 257 (E.D.N.Y. 1999).  However, even in light of Plaintiff's *pro se* status, the Court cannot rely on any assertions for which he has failed to offer proper support.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

[2] Given that the pagination of the Complaint is haphazard, the Court refers to it using its ECF page numbers.  The Court also refers to Plaintiff's Opposition by its ECF page numbers, as it otherwise lacks pagination.  *See* Doc. 44.

Océ is a copying and printing specialist that offers a range of products and services relating to "imaging needs." *Id.* ¶ 1. Océ asserts that it "is an equal opportunity employer, which does not discriminate on any basis protected by applicable laws," and neither requests nor maintains national origin information for its employees. *Id.* ¶ 2. Through its acquisition of Pitney Bowes, Océ also acquired Plaintiff as an employee.[3] *Id.*

**B. Events Leading Up to Plaintiff's Termination on December 3, 2008**

Plaintiff's supervisors included Leonard Sterling ("Sterling"), a Field Supervisor, and Defendant Donovan, the District Manager. *Id.* ¶ 6. In 1998, Plaintiff received a promotion to Associate Customer Service Representative, as well as a raise. *Id.* ¶ 8. He was also promoted in January 2000, to Customer Service Representative, and again received a pay raise. *Id.* ¶ 9. Each subsequent January, from January 2001 through and including January 2006, and then in February of 2007, Plaintiff received additional pay raises. *Id.* ¶ 10. At his deposition, Plaintiff testified that he did not believe that he was being mistreated or discriminated against when he received salary increases. *Id.* ¶ 11.

During his employment at Océ, Plaintiff periodically received performance appraisals, in which Sterling and Donovan were involved; Plaintiff also discussed his performance reviews with his supervisors. *Id.* ¶¶ 13-15. Defendants' performance appraisals rank employees on a scale from one to five, with one being the lowest and five the highest. *Id.* ¶ 16. Plaintiff received an overall final rating of "2" on his 2006 performance evaluation, which, at his deposition, he described as "not good." *Id.* ¶ 18. Plaintiff further testified that he did not believe that his 2006 performance evaluation score resulted from discrimination against him. *Id.* ¶ 20.

---

[3] Defendants do not provide a specific date for the acquisition of Pitney Bowes, thus it is unclear on what exact date Plaintiff began working for Océ.

Defendants put Plaintiff on an "action plan" following his low 2006 performance evaluation score in an attempt to improve his performance, and more specifically, "his customer communication and follow up."  *Id.* ¶ 21.  The following year, Plaintiff received an overall rating of "3.25" for his 2007 performance evaluation, which included a rating of "1" in the category of cost control and asset management.  *Id.* ¶¶ 22-24.

Donovan prepared a mid-year performance evaluation for Plaintiff in 2008, which covered the period from January 1 through May 31, 2008.  *Id.* ¶ 26.  Plaintiff received a final mid-year rating of "2.10."  *Id.* ¶ 28.  Plaintiff asserts that he never received a copy of this 2008 mid-year performance evaluation.  *Id.* ¶ 27; Pl.'s Opp. 3.

"[D]ifficult economic conditions in 2008" forced Océ to reduce its workforce in late 2008.  Defs.' 56.1 Stmt. ¶¶ 31-32.  Donovan received instructions from management that he needed to reduce headcount by three service technicians in the New York City office.  *Id.* ¶ 33. Defendants contend that every service technician in the New York City office was assessed according to the same set of criteria in connection with the 2008 layoffs, which included evaluation of employee performance ratings for 2007 and 2008.  *Id.* ¶¶ 34-36.  Defendants entered the results of each service technician's assessment into a chart (*see* Donovan Decl. Ex. F, Doc. 40).  Defs.' 56.1 Stmt. ¶ 37.  Through an unsworn statement included with his opposition, and without citing any evidence to support his theory, Plaintiff asserts that Defendants evaluated him based on different criteria, and in a discriminatory manner, because Defendants did not conduct any performance evaluation of him in 2008, whereas all White employees received evaluations.  Compl. 3; Pl.'s Opp. 2-3.

On December 3, 2008, Defendants ultimately terminated the three employees with the lowest aggregate performance scores:  Plaintiff, Bentley Rodgers and Fredrick Marsiello

(respectively, "Rodgers" and "Marsiello").  Defs.' 56.1 Stmt. ¶¶ 39, 42.  Defendants assert that they terminated these employees, including Plaintiff, irrespective of their race and national origin; Marsiello is a White male, they note, and two Black and two Caribbean service technicians employed by Océ were *not* selected for layoff at that time.  *Id.* ¶¶ 40-41.  In total, Océ terminated 51 employees "across many different departments" as part of the 2008 reduction in force.  *Id.* ¶ 45.  Donovan personally notified Plaintiff, Rodgers and Marsiello of their terminations and explained to them "that their performance did not measure up" to that of the employees being retained.  *Id.* ¶ 44 (citing Donovan Decl. ¶ 22).

### C.  Plaintiff Files an EEOC Charge of Discrimination

On or about September 28, 2009, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming that Océ discriminated against him based on his age, race, color and national origin.  Defs.' 56.1 Stmt. ¶ 108.  On June 30, 2011, the EEOC dismissed Plaintiff's Charge of Discrimination and issued him a Notice of Right to Sue. *Id.* ¶ 109; Compl. 6.  Based on its investigation, the EEOC was "unable to conclude" whether the information that it obtained established any statutory violations.  Compl. 6.

### D.  Additional Layoffs in 2009

On October 15, 2009, Océ laid off two additional service technician employees, Cliff Hansen and Leonid Smolyar, both of whom are White.  Defs.' 56.1 Stmt. ¶¶ 61-64.  Although Plaintiff, in his opposition to the instant motion, argues that Defendants only fired White employees *after* he filed his EEOC complaint (Pl.'s Opp. 3), Defendants note that, according to its date stamp, Plaintiff did not send the EEOC charge to Océ until October 27, 2009, and Océ did not ultimately even receive the charge until March 2, 2010.  Defs.' 56.1 Stmt. ¶ 65.

### E.  The Instant Action

On September 27, 2011, Plaintiff filed the instant action.  He alleges that, by terminating him without providing him with a written performance evaluation for 2008—something provided to all of the White service technicians—Defendants discriminated against him on the basis of his race and national origin, in violation of Title VII, the NYSHRL and the NYCHRL.[4]  He seeks reinstatement as well as back and front pay in the amount of $150,000.00.  *See* Compl.

## II.    Legal Standard on Motion for Summary Judgment

### a.  General Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

---

[4] Plaintiff's EEOC Charge included allegations of age-based discrimination.  Defs.' 56.1 Stmt. ¶ 111.  At his deposition, however, Plaintiff expressly stated that this suit "doesn't have anything to do with age," and the allegations in the Complaint do not mention age.  Atlas Decl. Ex. A (Burnett Dep. Tr. 128:3 – 128:24), Doc. 38.  Accordingly, the Court does not construe the Complaint to raise a claim for age-based discrimination.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).   However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

### b.  Special Solicitude for *Pro Se* Litigants

The Second Circuit has made clear that "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment."  *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  *Pro se* litigants' submissions are "held 'to less stringent standards than formal pleadings drafted by lawyers.'"  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621, 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants).  Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*,

710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted).  "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### c.  Additional Summary Judgment Standards for Employment Discrimination Cases

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); however, "'[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'"  *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 415 (2d Cir. 2011) (summary order) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)).  Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'"  *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).  Furthermore, "[e]ven in the discrimination context, [] a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."  *Holcomb*, 521 F.3d at 137; *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  A "nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'"  *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

"[S]ummary judgment may not be granted simply because the court believes that the

plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a

lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly

tilted in one direction that any contrary finding would constitute clear error."  *Danzer v. Norden*

*Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).  "Nonetheless, when an employer

provides convincing evidence to explain its conduct and the plaintiff's argument consists of

purely conclusory allegations of discrimination, the Court may conclude that no material issue of

fact exists and it may grant summary judgment to the employer."  *Walder v. White Plains Bd. of*

*Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citing *Budde v. H & K Distrib. Co.*, 216 F.3d

1071 (2d Cir. 2000)).

## III.   Discussion

### A.   Defendants Are Entitled to Summary Judgment on Plaintiff's Title VII Claims.

#### i.   Legal Standard

Plaintiff's Title VII discrimination claims are properly analyzed under the three-step

burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.

2005) (noting that retaliation claims under Title VII are evaluated under the *McDonnell Douglas*

three-step burden-shifting analysis).  Under the *McDonnell Douglas* framework, a plaintiff

alleging a Title VII violation must first demonstrate a *prima facie* case of discrimination or

retaliation.  *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Jute*, 420 F.3d at 173.  The

Second Circuit has explained that a plaintiff's burden at this stage is minimal.  *Abdu-Brisson*,

239 F.3d at 467.  Nonetheless, in order to state a *prima facie* case of discrimination, "a plaintiff

must proffer some admissible evidence of circumstances that would be sufficient to permit an

9

inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002) (summary order), and cannot meet his burden through reliance on unsupported assertions. *Goenaga*, 51 F.3d at 18. "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000). A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is also insufficient. *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Civ. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)), *aff'd*, 604 F.3d 712 (2d Cir. 2010).

If a plaintiff successfully presents a *prima facie* case, the defendant must then rebut the presumption by offering legitimate and non-discriminatory reasons for the adverse employment action demonstrated in plaintiff's *prima facie* case. *Abdu-Brisson*, 239 F.3d at 468 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The defendant's burden at this step in the analysis is also "light." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior." *Id.*

"If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted," and "drops from the case." *Burdine*, 450 U.S. at 255 n.10. Under the third step of the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove intentional discrimination by a preponderance of the evidence. *Abdu-Brisson*, 239 F.3d at 469. The Second Circuit has explained that "there are two distinct ways for a plaintiff to prevail—'either by proving that a discriminatory motive, more likely than not, motivated the

defendants or by proving both that the reasons given by the defendants are not true and that discrimination is the real reason for the actions.'"  *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (citation omitted).  It is important to note that "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).

### ii.  Plaintiff's Discrimination Claims[5]

At the outset, the Court GRANTS Defendants' motion to dismiss Plaintiff's Title VII claims against Defendant Donovan because "individuals are not subject to liability under Title VII."  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (citing *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000)); *see also* Defs.' Mem. 25, Doc. 37.

With respect to Defendant Océ, to prove a *prima facie* case of discrimination, a plaintiff must show that:  (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010) (citing *Holcomb*, 521 F.3d at 138).  Here, Defendants focus their attack on the fourth element.  Defs.' Mem. 14.

The Court finds that Plaintiff has failed to adduce any admissible evidence in support of a *prima facie* case of discrimination.  First, the Court finds it significant that, at his deposition, Plaintiff conceded that, throughout the entire time period that he worked for Defendants, no

---

[5] Although Plaintiff asserts that he suffered discrimination based on two distinct grounds—his race as well as his national origin—the Court notes that he has presented identical allegations, evidence and arguments with respect to both claims, and accordingly, treats them as one.

11

person ever made a comment to him that suggested he or she was prejudiced against Plaintiff on the basis of his race or national origin.  Atlas Decl. Ex. A (Burnett Dep. Tr. 136:6 – 137:10). Rather, his claim is that termination was the only discriminatory action that Defendants ever took against him.  *Id.* at 136:6 – 136:22.

This case amounts to an uncorroborated theory that Defendants discriminated against Plaintiff because he was not given a written performance evaluation for 2008 "of any sort," even though all White employees received such evaluations.  Compl. 3; Pl.'s Opp. 2-3.  Plaintiff similarly speculates that Defendants discriminated against him because they used "different criteria" to evaluate the White employees subject to layoffs (Pl.'s Opp. 2-3)—in particular, he claims that White employees were evaluated over a two-year period, and he was not.  Atlas Decl. Ex. A (Burnett Dep. Tr. 137:14 – 139:22).  In support of his theory, Plaintiff solely cites his subjective interpretation of the Position Statement that Defendants' lawyers submitted to the EEOC and his own favorable impression of his performance.  *Id.*; *see also* Pl.'s Opp. 2-3. According to Plaintiff, the Position Statement reveals that all technicians received performance evaluations for 2008—and because he did not receive one, he must have been the victim of discrimination.  Pl.'s Opp. 2-3.  Defendants, in response, note that he misconstrues the Position Statement.  Defs.' Mem. 16-17.  Defendants further explain that they performed a mid-year evaluation of Plaintiff in 2008, but never performed an end-of-year performance evaluation of him because they terminated him on December 3, 2008.  Defs.' 56.1 Stmt. ¶¶ 12, 29.

Plaintiff's theory of discriminatory termination lacks "an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  Contrary to his interpretation, the Position Statement does not raise any inference of discrimination.  It provides as follows:

> In deciding which Service Technicians to terminate, Océ made a detailed assessment of all individuals according to approximately eleven legitimate, non-

> discriminatory performance-based factors.  All Service Technicians were evaluated for layoffs according to their ratings in multiple, performance-based categories over a two-year period …
>
> Although [Plaintiff] did not receive a written performance evaluation for 2008 (since he was terminated in December 2008), as of November 2008 his projected performance rating was 2.

Defs.' Mem. 17.  Plaintiff has failed to refute the evidence in the record demonstrating that, just like the other two service technicians that were terminated on December 3, 2008—one of whom was a White male—Plaintiff did in fact receive a mid-year performance evaluation in 2008.  *See* Donovan Decl. Ex. E (Burnett Mid-Year Evaluation for 2008).  His bald, self-serving assertions that Océ fabricated his 2008 mid-year review fail to create a genuine factual dispute.  *Fincher*, 2008 WL 4308126, at *3.  Moreover, it is uncontested that, like Plaintiff, Rodgers and Marsiello never received year-end evaluations for 2008 due to their terminations on December 3.  Defs.' 56.1 Stmt. ¶ 57.  Nor does Plaintiff dispute that two Black and two Caribbean service technicians employed by Océ were *not* selected for layoff at that time.  *Id.* ¶¶ 40-41.  Indeed, the Court has not found any facts in the record contradicting Defendants' representations that they assessed all service technician employees in New York based on the same, non-discriminatory criteria. These undisputed facts belie Plaintiff's unsupported allegations of discrimination.

Finally, to the extent that Plaintiff also argues that his actual performance during the 2008 calendar year was adequate (Pl.'s Opp. 3), he similarly fails to marshal a single fact in support of this contention, and has not disputed that he received low performance scores in the three years prior to his layoff.

Because Plaintiff has offered only conclusory allegations in support of his claims and has failed to come forward with *any* admissible evidence to suggest that his termination was

motivated by racial animus or animus toward his national origin, the Court GRANTS summary judgment in favor of Defendants on his Title VII claims. *Griffin*, 103 F. Supp. 2d at 308.

### B. Plaintiff's State Law Claims Are Dismissed.

Defendants have also moved for summary judgment on Plaintiff's state law claims. Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having dismissed Plaintiff's sole federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). Thus, they are likewise DISMISSED.

## IV. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to mail a copy of the instant Opinion and Order to Plaintiff, terminate the pending motion (Doc. 36) and close the case. The Court certifies, pursuant to 28 U.S.C. § 1915(a) (3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:     September 11, 2014
           New York, New York

_____
Edgardo Ramos, U.S.D.J.